**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JEREMY VENSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 C 6682 |
| | ) |
| LAZARO ALTAMIRANO, | ) Judge Ruben Castillo |
| CHRISTOPH E. JANIA, | ) |
| JOHN D. O'KEEFE, and the | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Jeremy Venson sued Chicago Police Officers Lazaro Altamirano, Christoph E. Jania, and

John D. O'Keefe (the "Officers"), and the City of Chicago (collectively, "Defendants") for false

arrest, illegal search, and malicious prosecution under 42 U.S.C. § 1983.[1]  (R. 1, Compl.)  After a

four-day trial, the jury returned a verdict in favor of Defendants on all counts.  Presently before

the Court are three post-trial motions by Venson: (1) a motion for judgment as a matter of law

pursuant to Federal Rule of Civil Procedure 50(b), (R. 123, Pl.'s Mot. for J.); (2) a motion to set

aside the judgment under Rule 60(b)(3) and for sanctions, (R. 125, Pl.'s Mot. to Set Aside J.);

and (3) a motion for a new trial pursuant to Rule 59(a), (R. 127, Pl.'s Mot. for New Trial).  For

the reasons stated below, Venson's motions are denied.

## BACKGROUND

Venson filed suit against Defendants on November 20, 2008. (R. 1, Compl.)  The suit

stemmed from the events surrounding the Officers' arrest of Venson on November 2, 2007.

---

[1] Venson also alleged a "due process" claim in his complaint, but summary judgment on that count was granted in favor of Defendants by Judge Anderson prior to the transfer of this case. (R. 57, Min. Entry.)

Certain facts were undisputed at trial. Specifically, both sides agreed that Venson was arrested around noon, and had $52 in his possession at the time of the arrest. He was charged with solicitation of unlawful business and possession of a controlled substance. After Venson spent 19 days in jail, the criminal charges against him were dismissed on November 20, 2007.

At trial, Venson presented his own testimony in support of his claims of false arrest, illegal search, and malicious prosecution. He testified that he was on his way to his girlfriend's house when he was stopped by the Officers. Venson further testified that he did not have any drugs on him when he was stopped. According to Venson, the Officers were very physical with him and they slammed his face into the hood of the police car. He also stated that the Officers aggressively searched him, going so far as to search inside of his underwear. Venson testified that after he was arrested, the Officers drove him around the neighborhood in an attempt to obtain information from him about illegal activity in the neighborhood. When he told the Officers that he had no information to give them, Venson said that O'Keefe pulled a baggie filled with white powder from his vest pocket and told Venson that they were going to take him in and charge him with a narcotics offense.

Defendants presented a different version of events through the testimony of Officers Altamirano, Jania, and O'Keefe. They testified that they heard and saw Venson yell "rocks, rocks," a common term for crack cocaine, at a passing vehicle while they were on patrol in an unmarked police car. The Officers said that they then drove one block down a one-way street to detain Venson. According to the Officers, Venson turned around and walked in the direction of their vehicle as they drove toward him. Jania testified that after he exited the police car and walked toward Venson, he saw Venson drop a green tinted Ziploc baggie with what he believed

were narcotics. The Officers said that they then arrested and searched Venson, but not in the manner described by Venson during his testimony.

On February 4, 2011, the jury returned a verdict in favor of Defendants on all counts.

## ANALYSIS

I.    **Motion for judgment as a matter of law**

Rule 50 authorizes a court to enter judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).[2] Under this standard, "the question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from the evidence, is sufficient to allow a reasonable jury to find in favor" of Defendants. *Hall v. River Forest, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008) (citation omitted). In making this determination, a court may not reweigh the evidence, draw its own inferences, or substitute its own determinations regarding the credibility of the witnesses for those made by the jury. *Gower v. Vercler*, 377 F.3d 661, 666 (7th Cir. 2004).

Venson claims that "no reasonable jury could have had a legally sufficient basis to find for defendants" for several reasons. (R. 123, Pl.'s Mot. for J. at 1.) The main thrust of his argument is that the Officers' testimony was "inherently incredible" and should be disregarded. (*Id.* at 5-7.) It is well-settled that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Payne v.*

---

[2] Because the Court did not grant Venson's oral motion for judgment as a matter of law under Rule 50(a) at the close of evidence during the trial, Venson has renewed the motion under Rule 50(b).

*Milwaukee Cnty.*, 146 F.3d 430, 432 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Thus, when a case comes down to a credibility contest, a court may not grant judgment as a matter of law simply because it believes one witness over another. *See Kasper v. Saint Mary of Nazareth Hosp.*, 135 F.3d 1170, 1173 (7th Cir. 1998). A court may, however, disregard testimony that is "opposed to the laws of nature or undisputed physical or scientific facts." 9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2527 (3d ed. Supp. 2010). Accordingly, "[w]hen a case turns on credibility, neither side is entitled to judgment as a matter of law unless objective evidence shows that it would be unreasonable to believe a critical witness for one side." *Kasper*, 135 F.3d at 1173 (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985)).

Here, Venson argues that the Court should disregard the Officers' testimony that they heard Venson yell "rocks, rocks" because it was "physically impossible" or "exceedingly improbable." (R. 123, Pl.'s Mot. for J. at 3.) The Officers testified that they were driving through the intersection of 13th Street and Kedvale when they heard and saw Venson, who was standing at the northeast corner of 13th Street and Keeler Avenue. This was a distance of 300 feet. The Officers testified that the window of their police car was partially down, or at least "cracked open a little bit," and that they heard Venson yell "rocks, rocks" at the "top of his lungs" towards a passing vehicle. According to the testimony, Venson was not facing the Officers; he was looking west or southwest, and the Officers were facing west.

Venson argues that the Officers' testimony is "inherently incredible" given the distance between the Officers and Venson, the testimony that the police car window was open only a crack, the noise from other traffic in the area, and the fact that Venson was not directly facing the

Officers when they heard him. (*Id.* at 4-5.) The Court disagrees. Venson has not put forth any objective evidence showing that it would be "physically impossible" for Venson's shouts to be heard from a block away, or even that it would be implausible. Instead, the testimony at trial was that only one other car was present in the area at the time the Officers heard Venson, and there was no evidence of other noise in the vicinity. At trial, Venson described the distance in terms of the width of the courtroom, and the Court also took judicial notice that the length of the hallway outside of the courtroom was approximately 325 feet. The verdict indicates that the jury still credited the Officers' testimony that they heard the one syllable word, repeated twice, despite the evidence regarding the distance, and the Court will not disturb that finding based on Venson's arguments—not objective evidence—to the contrary. Venson's other arguments regarding the "improbability of the events" as testified to by the Officers are similarly unavailing.

Venson next argues that even if the Officers heard Venson shout "rocks, rocks," they still did not have probable cause to arrest him. (*Id.* at 7.) As part of this argument, Venson maintains that there were "two stages or periods of detention" that occurred, "one attributable to the decision to arrest him for Solicitation of Unlawful Business and the second attributable to the decision to arrest him for Possession of a Controlled Substance." (*Id.*) The Court infers from this that the first "detention" refers to the Officers' initial stop of Venson, and the second refers to his arrest after Jania saw him drop a small baggie containing what he believed were drugs.

Venson first argues that that the Officers did not have probable cause to arrest him at the time of the initial "detention." (*Id.*) Venson contends that the basis of this "detention" was related to the Officers' suspicion or belief that Venson was engaging in the solicitation of unlawful business because Jania had not yet seen Venson drop the baggie. The definition of

5

"solicitation of unlawful business" incorporated into the jury instructions stated that "[u]nder the Chicago Municipal Code, a person commits the offense of Solicitation of Unlawful Business when he knowingly offers for sale any substance containing cocaine." (R. 112, Jury Instructions at 16.)

Venson maintains that the Officers did not have probable cause to arrest him for solicitation of unlawful business at the time of the first "detention" because there were "no customers," "no proof of the presence of cocaine," "no exchange of suspected controlled substance," "no exchange of money," and "no sale." (R. 123, Pl.'s Mot. for J. at 9.) Venson may be correct that merely hearing Venson yell "rocks, rocks" was insufficient to give the Officers probable cause to arrest him for solicitation of unlawful business.[3] The Court need not wade into this unsettled area, however, because Venson's argument relies on the unproven assumption that the first "detention" constituted an arrest for which probable cause was necessary, rather than an investigative *Terry* stop. *See United States v. Bullock*, 632 F.3d 1004, 1014-15 (7th Cir. 2011) (explaining that "an officer does not need probable cause to conduct an investigatory stop," but rather must have a "reasonable suspicion that the stopped individual has or is about to commit a crime") (citation omitted). Venson glosses over this issue by saying that "[t]here is no doubt that when the police officers yelled out, 'Come here' or 'Stop' to Jeremy Venson as he was walking down the street, he was not free to leave." (R. 123, Pl.'s Mot. for J. at 8.) This conclusory

---

[3] There is a split among Illinois appellate courts regarding what is necessary to establish probable cause to arrest for solicitation of unlawful business, and the Illinois Supreme Court has indicated that it will weigh in on the issue. *See People v. Grant*, 951 N.E.2d 1153, 1162 (Ill. App. 1st Dist. 2011), *leave to appeal granted*, 955 N.E.2d 475 (Ill. 2011) (finding that probable cause did not exist to arrest the defendant for solicitation of unlawful business "based on nothing more than observing the defendant standing on the public way yelling 'dro, dro'"); *People v. Neal*, 954 N.E.2d 358, 362 (Ill. App. 1st Dist. 2011) (finding that probable cause did exist based on the defendant's "overt act of yelling 'blows' to passers-by").

statement ignores that the issue of whether or when an arrest occurred is a question of fact decided by the jury. *See Sibron v. New York*, 392 U.S. 40, 67 (1968) ("[I]t is a question of fact precisely when, in each case, the arrest took place."); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1018 fn.7 (7th Cir. 2006) ("Ascertaining the reasonableness of the suspect's belief that she is under arrest is typically a question of fact for the jury.") (citation omitted). Venson has not put forth any arguments as to why it was unreasonable for the jury to find that the first "detention" did not constitute an arrest, and therefore that no false arrest occurred at that juncture. Thus, the Court concludes that Venson is not entitled to judgment as a matter of law on his false arrest claim as it pertains to the first period of "detention."

With the second period of "detention," there is no dispute that an arrest occurred. The question, then, is whether the Officers had probable cause at that time to arrest Venson for either solicitation of unlawful business or possession of a controlled substance. *See Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007) (explaining that an officer need not have probable cause to arrest for all charged crimes, but rather any crime). Venson argues that the Officers' testimony that Venson dropped a small plastic baggie in front of the Officers was "exceedingly improbable" and that there was therefore no probable cause to arrest him for possession of a controlled substance. (R. 123, Pl.'s Mot. for J. at 10-11.) This argument fails, however, because it was not unreasonable for the jury to credit Jania's version of events—that he saw Venson drop a baggie of what he believed contained drugs—even if, as Venson argues, under Jania's version Venson did not act as one would expect a "drug dealer" to act. (*Id.*) The Court will not grant

judgment as a matter of law for Venson when the verdict clearly turned on a credibility determination that was not unreasonable for the jury to make. *See Kasper*, 135 F.3d at 1173.[4]

Finally, Venson contends he is entitled to judgment as a matter of law on his malicious prosecution claim. (R. 123, Pl.'s Mot. for J. at 13.) In support, he reiterates his arguments as to the lack of probable cause to arrest him for solicitation of unlawful business and possession of a controlled substance. The Court finds, however, that the evidence was sufficient for the jury to conclude that Defendants had probable cause to commence the criminal prosecution of Venson for each of the charges. Specifically, the testimony that the Officers heard Venson yell "rocks, rocks" and that Jania saw Venson drop a baggie of what he believed were drugs was sufficient to allow a reasonable jury to find for Defendants on this count. Accordingly, the Court concludes that Venson is not entitled to judgment as a matter of law on any of his claims.

## II. Motion to set aside the judgment and for sanctions

Venson next requests that the Court set aside the jury verdict pursuant to Rule 60(b)(3) and to assess sanctions against Defendants or their counsel for attorney misconduct. (R. 125, Pl.'s Mot. to Set Aside J.) Rule 60(b)(3) provides that a court may set aside a judgment if there is "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]" Fed. R. Civ. P. 60(b)(3). To obtain relief from judgment under Rule 60(b)(3), the moving party must show that: "(1) it maintained a meritorious claim at trial; and (2) because of the fraud, misrepresentation or misconduct of the adverse party; (3) it was *prevented*

---

[4] Venson also argues that given the absence of probable cause to arrest him on either charge, the search following his arrest was unlawful and he is entitled to judgment as a matter of law on his illegal search claim. (R. 123, Pl.'s Mot. for J. at 12-13.) As the Court concludes that Venson is not entitled to judgment as a matter of law on the false arrest claim, it likewise concludes that he is not entitled to judgment as a matter of law for the illegal search claim.

*from fully and fairly presenting its case* at trial." *Walsh v. McCain Foods, Ltd.*, 81 F.3d 722, 726 (7th Cir. 1996) (citing *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995)). A court need not determine that the fraud, misrepresentation, or misconduct altered the result of the case in order to vacate the judgment because "Rule 60(b)(3) protects the fairness of the proceedings, not necessarily the correctness of the verdict." *Lonsdorf*, 47 F.3d at 897.

Venson argues that the jury verdict should be set aside because defense counsel deliberately violated the Court's pre-trial rulings barring evidence about the scene of the arrest being a high crime area and evidence related to the "suspect cocaine" Jania said Venson dropped prior to his arrest. (R. 125, Pl.'s Mot. to Set Aside J. at 1-2.) The Court declines to vacate the verdict on these grounds. First, even assuming that defense counsel violated the Court's motion *in limine* rulings, Venson has not established that such a breach constitutes "misconduct" that warrants setting the verdict aside. Although the Court admonished defense counsel several times during the trial for his unprofessional presentation of the evidence, the Court does not believe that defense counsel willfully violated its pre-trial orders. And while Venson contends that Rule 60(b)(3) applies to both intentional and unintentional conduct, the case law he cites in support deals with misrepresentations made by an adverse party, not violations of a court's rulings on motions *in limine*.

Second, even if the Court were to conclude that defense counsel's violation of the motion *in limine* rulings constituted misconduct, Venson's perfunctory arguments fail to persuade the Court that he was prevented from "fully and fairly" presenting his case at trial. It was the Court, not Venson, that raised the issue of defense counsel's possible violation of the Court's ruling on Venson's motion *in limine*. Additionally, although the Court offered to provide a curative

9

instruction to the jury, Venson did not seek such an instruction. Finally, the testimony regarding whether Altamirano had made previous drug arrests in the area, which Venson contends violated the Court's ruling pertaining to evidence of the arrest area being a high crime area, was brief and related to Venson's argument that it was unlikely that people would yell "rocks, rocks" at the top of their lungs. The Court expressly permitted this testimony prior to its admission. Rule 60(b) is aimed at judgments that were obtained unfairly; none of this testimony prevented Venson from presenting his case "fully and fairly." The Court therefore finds that Venson has not met all three requirements to set aside the judgment pursuant to Rule 60(b)(3).

The Court also finds that sanctions on defense counsel as requested by Venson are not appropriate for the same reasons the Court declines to vacate the jury verdict. (*Id.* at 9.) The Court's dissatisfaction with defense counsel's conduct at trial was clear, and the Court sincerely hopes that defense counsel will treat future court proceedings with the respect and professionalism expected of counsel.

## III.     Motion for a new trial

Finally, Venson moves for a new trial pursuant to Rule 59. (R. 127, Pl.'s Mot. for New Trial.) Rule 59 allows a court to order a new trial if "the verdict is against the clear weight of the evidence or the trial was unfair to the moving party." *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (internal quotation marks and citation omitted). Venson posits three grounds for granting a new trial. First, he argues that attorney misconduct by defense counsel merits a new trial. (R. 127, Pl.'s Mot. for New Trial at 2.) Second, he contends a new trial is warranted because prejudicial evidentiary errors occurred at trial. (*Id.*) Finally, Venson argues that the

verdict was against the manifest weight of the evidence. (*Id.* at 4.) The Court will consider each argument in turn.

## A.    Attorney misconduct

First, regarding Venson's request for a new trial based on attorney misconduct, the Court's inquiry under Rule 59 is similar to its inquiry under Rule 60(b)(3). *See Wharf v. Burlington N. R.R. Co.*, 60 F.3d 631, 637 (9th Cir. 1995) ("The standards for granting new trials are essentially the same under both rules, although a Rule 59 motion, because it must be made within 10 days, may require a slightly lower showing than a motion under Rule 60.").[5] "The misconduct of counsel . . . justifies a new trial where the misconduct prejudiced the adverse party." *Weidemann v. Galiano*, 722 F.2d 335, 337 (7th Cir. 1983). As discussed above, Venson was not prejudiced by the line of questioning to which he objects, and a new trial based on this ground is not warranted.

## B.    Evidentiary errors[6]

### 1.    Jania's testimony regarding the quantity of narcotics

---

[5] *Wharf* examined a prior version of Rule 59(a). The current version contains a deadline of 28 days following the entry of judgment.

[6] The Court notes at the outset that Venson's arguments regarding the "prejudicial errors" made by the Court over the course of the trial are cursory and largely unsupported by pertinent authority. While Venson points the Court to four specific areas of testimony to which he objects, he fails to cite the rules of evidence or any case law in support aside from a sole reference to Rule 403. He also makes only the conclusory statement that the admission of each area of testimony was prejudicial, without further elaboration. This likely results from Venson's "kitchen sink" approach to his post-trial motions, and the Court cautions his counsel that "[i]t is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel," and that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *United States v. Holm,* 326 F.3d 872, 877 (7th Cir. 2003).

Venson first argues that the testimony by Jania that it is common for people who sell narcotics to possess only a small amount of narcotics was improper expert testimony. (R. 127, Pl.'s Mot. for New Trial at 2.) The Court finds that this testimony falls on the dividing line between lay and expert opinion. On the one hand, it appears to be lay opinion testimony based on Jania's personal observations and perceptions, not on any scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. Additionally, the question posed to Jania was limited to his experience, and his answer was not "couched in terms of an expert opinion." *Clarett*, 657 F.3d at 671 (7th Cir. 2011) (citing 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6253, at 119-20 (1997) ("[S]everal courts have held that, in cases involving opinions based on various types of experience in a given industry or on a specific subject, the opinions properly could have been classified as either lay or expert.")). On the other hand, the testimony was not "limited to what he observed in the search or to other facts derived from this particular" incident. *United States v. Oriedo*, 498 F.3d 593, 603 (7th Cir. 2007). Rather, Jania "brought the wealth of his experience" as a police officer "to bear on those observations and made connections for the jury based on that specialized knowledge," thus making the testimony appear to be that of an expert. *Id.*

The Court need not decide whether Jania's testimony crossed the line and amounted to expert testimony, however, because its admission, at worst, amounted to harmless error. Fed. R. Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . ."). The quantity of drugs Jania claimed Venson dropped was a minor issue, and therefore the error in admitting Jania's testimony would not have had "a substantial and injurious effect or influence on the determination of [the] jury."

*Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005). Venson also does not argue that he was deprived of an opportunity to adequately cross-examine Jania, and "he questions neither the accuracy of the statements offered nor the qualifications of [Jania] to make them." *Oriedo*, 498 F.3d at 604 (holding that error in classifying agent's testimony as lay opinion and failing to subject it to the disclosure requirements was harmless). Accordingly, the Court declines to grant a new trial based on the admission of this testimony, even if in error.

   2.   **The Officers' testimony regarding previous occurrences with people shouting "rocks, rocks" and walking towards police officers**

Venson next challenges the questions asked of Altamirano regarding whether he had heard people shouting "rocks, rocks" in the area where Venson was arrested in the past. (R. 127, Pl.'s Mot. for New Trial at 2.) He contends that these questions permitted Altamirano "to testify to speculative, irrelevant, and prejudicial facts." (*Id.* at 3.) Venson also objects to defense counsel's questioning of O'Keefe that "enabled [him] to speculate and give improper opinions as to how drug dealers operate." (*Id.*) The Court concludes that neither line of questioning was admitted in error. The Officers' testimony was based on their observations, and was not speculative or improper opinion testimony. While the Court granted Venson's motion *in limine* to bar reference to the 13th Street and South Keeler area as a "high crime or drug area," the Court permitted the testimony about people yelling "rocks" to rebut Venson's argument that the Officers' account of Venson's arrest was not credible. Specifically, Venson has repeatedly argued that, as stated in his motion for judgment as a matter of law, "[y]elling out 'rocks' at the top of one's lungs is no way to conduct a clandestine drug deal and it is 'exceedingly improbable' that it happened this way." (R. 123, Pl.'s Mot. for J. at 6.) Similarly, O'Keefe's testimony that

he has witnessed individuals who have been involved in crimes walk in the direction of the police so as to pretend that they were not involved was relevant to rebut Venson's argument that the Officers' account that Venson walked towards them, as opposed to away from them where he could have evaded arrest, was "incredible." (*See id.* at 10.) Like Jania's testimony discussed above, even if it was erroneous to admit this testimony, such error was harmless because it was related only to minor issues in the case and did not affect the jury's verdict. *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 756 (7th Cir. 2002) ("[A]n error is harmless if it did not contribute to the verdict in a meaningful manner.").

### 3.      Altamirano's testimony regarding how it felt to be sued

Finally, Venson argues that Altamirano's testimony about how it felt to be sued was admitted in error because it enabled him "to gain sympathy by saying how 'disheartened' and 'hurt' he was." (R. 127, Pl.'s Mot. for New Trial at 3.) Venson does not develop this argument further or cite any authority in support, but the Court assumes that Venson is arguing that this testimony was unfairly prejudicial in violation of Rule 403. Defendants contend that the testimony was properly admitted because it was relevant to the jury's assessment of whether punitive damages were appropriate. (R. 133, Defs.' Resp. at 9.) This is a close call, as the testimony was minimally relevant to the issue of punitive damages, and was likely to arouse sympathy with the jury. Nevertheless, the admission of this testimony, even if in error, was harmless and does not warrant a new trial. Viewing this brief testimony in the context of all of the evidence presented at trial, the Court concludes that "the same judgment would have been rendered regardless of the error." *Goodman v. Ill. Dept. of Fin. and Prof'l Regulation*, 430 F.3d 432, 439 (7th Cir. 2005).

## C.    Weight of the evidence

Venson's final argument is that the verdict was against the weight of the evidence and resulted in a miscarriage of justice. (R. 127, Pl.'s Mot. for New Trial at 4.) Rule 59 permits a court to order a new trial "[i]f, after evaluating the evidence, the district court is of the opinion that the verdict is against the manifest weight of the evidence[.]" *Mejia v. Cook Cnty.*, 650 F.3d 631, 633 (7th Cir. 2011) (citation omitted). In ruling on a motion for a new trial, a court "may consider the credibility of witnesses, the weight of the evidence, and anything else which justice requires." *Bob Willow Motors, Inc. v. Gen. Motors Corp.*, 872 F.2d 788, 798 (7th Cir. 1989). However, "[t]he district court's power to grant a new trial on weight grounds is not unlimited: a certain deference to the jury's conclusions is appropriate. This deference is encompassed within the manifest weight standard, which balances a decent respect for the collective wisdom of the jury against a duty not to approve miscarriages of justice." *Mejia*, 650 F.3d at 633, fn.1 (internal quotation marks and citations omitted). In weighing the facts, the court "is bound to the same evidence the jury considered, and can strike a piece of evidence from its weighing process only if reasonable persons could not believe it because it contradicts indisputable physical facts or laws." *Id.* (internal quotation marks and citation omitted).

In arguing that the verdict was against the manifest weight of the evidence in this case, Venson repeats many of his arguments discussed above. Even when viewed under the more lenient standards of a motion for a new trial, however, these arguments are not successful. The Court's own assessment of the evidence leads it to conclude that the trial came down to a classic credibility contest—Venson's word against the Officers'. While the Court does not deny that there were inconsistencies in the Officers' testimony that cast doubt on their credibility, Venson's

testimony also raised many red flags regarding his own credibility. Given this draw, the Court concludes that the jury's verdict was not against the manifest weight of the evidence because Venson had the burden of proof. The bottom line is that Venson received a fair trial, free from any prejudicial error. While Venson and his counsel are understandably frustrated by the jury's verdict, the Court cannot simply offer a repeat chance to win given the state of the trial record in this lawsuit.

## CONCLUSION

For the foregoing reasons, Venson's motions for judgment as a matter of law (R. 123), to set aside the judgment and for sanctions (R. 125), and for a new trial (R. 127) are DENIED.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated:** December 1, 2011